FILED

2024 Mar-21  AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HIGHTOWER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  5:23-cv-00258-LCB** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff James Hightower seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for disability and disability insurance benefits.  The Court has carefully considered the record, and for the reasons expressed below, **AFFIRMS** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated under it.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests on the claimant at the first four steps of this five-step process; the burden then shifts to the Commissioner at step five, if the evaluation proceeds that far.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."  *Id*. at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02.  *Id*. at § 404.1520(d).  If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1525.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997))).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. § 404.1520(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* § 404.1520(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  *Id.* §§ 404.1512(b)(3), 404.1520(g).  If the claimant can perform other work,

the evaluator will not find the claimant disabled.  *See id.* § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)).  Although the Court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Hightower filed an application for disability and disability insurance benefits on January 31, 2022, alleging disability beginning August 31, 2019. (Tr. 198-205). Hightower's claim was denied initially on April 20, 2022, and upon reconsideration on July 12, 2022. (Tr. 112-16, 118-22). Thereafter, Hightower filed a written request for a hearing, which was received by the Commissioner on July 19, 2022. (Tr.123-24). An Administrative Law Judge ("ALJ") held a telephone hearing on November 8, 2022. (Tr. 17, 36, 38, 182).

The ALJ issued an opinion on November 29, 2022, denying Hightower's claims. (Tr. 14-31). Applying the five-step sequential process, the ALJ found at step one that Hightower did not engage in substantial gainful activity since August 31, 2019, the alleged onset date. (Tr. 20). At step two, the ALJ found Hightower manifested the severe impairments of degenerative disc disease of the lumbar spine. (Tr. 21). At step three, the ALJ found Hightower's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

At step four, the ALJ found Hightower exhibited the residual functional capacity ("RFC") to perform medium work with the following exceptions:

> no climbing of ladders, ropes, scaffolds; occasional climbing of ramps/stairs; frequent stooping, kneeling, crouching, crawling. The claimant should also avoid concentrated exp[osure] to extremes of cold temp[erature]s, unprotected heights and moving machinery.

(*Id.*).

In addition, the ALJ determined Hightower could perform past relevant work as a shipping and receiving supervisor, and car wash supervisor.  (Tr. 30).  Accordingly, the ALJ determined Hightower has not suffered a disability, as defined by the Social Security Act, since August 31, 2019.  (Tr. 30-31).

Hightower requested review of the ALJ's decision.  (Tr. 197).  On September 9, 2022, the Appeals Council denied review, which renders the ALJ's decision as the Commissioner's final decision.  (Tr. 1-6); *see Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary." (citing 20 C.F.R. § 404.955)).  On February 1, 2023, Hightower filed his complaint with the Court seeking review of the ALJ's decision.  (Doc. 1).

## ANALYSIS

In this appeal, Hightower argues the ALJ erred in finding that his PTSD was a non-severe impairment, failed to properly apply the pain standard, and that the

ALJ's RFC finding is not supported by substantial evidence.  (Doc. 8 at 5, 8).  For the reasons discussed below, the Court disagrees.

## I. Hightower Did Not Sustain his Burden of Proving that his PTSD Qualifies as a Severe Impairment.

Step two of the sequential evaluation process, during which the ALJ considers the medical severity of a claimant's impairments, constitutes a "'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).

An impairment or combination of impairments is "non-severe" if it "does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  The term "basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including:

(1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)   Capacities for seeing, hearing, and speaking;
(3)   Understanding, carrying out, and remembering simple instructions;
(4)   Use of judgment;
(5)   Responding appropriately to supervision, co-workers and usual work situations; and
(6)   Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).  Thus, an ALJ should characterize an impairment as non-severe "only if the abnormality is so slight and its effect so minimal that it would

clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Schink*, 935 F.3d at 1265 (citing *McDaniel*, 800 F.2d at 1031).

Furthermore, the mere diagnosis of a physical or mental condition does not necessarily connote a disabling impairment, or even a severe impairment, as the functional effect of a claimant's impairments, not the mere existence of the impairments themselves, governs the assessment of an impairment. *See Moore*, 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (finding diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (finding that while a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").

Furthermore, step two requires only a finding of "at least one" severe impairment to continue to the later steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (citing *Jamison v. Bowen*, 814 F.2d 585, 588

(11th Cir.1987)). Meaning, "the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Thus, "there is no need for an ALJ to identify every severe impairment at step two." *Id.*

Here, Hightower testified that his PTSD interfered with his previous work, and that he experiences nightmares, isolates from people, and has trouble sleeping, concentrating, and focusing. (Tr. 48, 54-55, 58, 62). Hightower also reported psychological symptoms to the consultative psychological examiner. (Tr. 314-16). In combination with Hightower's mental health history, the examiner diagnosed Hightower with PTSD. (Tr. 316). The examiner stated that Hightower "may struggle to concentrate for an extended period" of time and that "[s]ocial interactions are difficult for [Hightower] as he gets easily irritated." In addition, according to the examiner, "[p]ressures related to work setting would pose a problem due to anxiety." (*Id.*).

As the ALJ noted, Hightower had generally normal clinical signs during the examiner's mental status exam. (Tr. 24). Indeed, Hightower had an anxious mood, difficulties with consent, and became frustrated. (*Id.*). Hightower also reported having paranoia. (*Id.*). However, Hightower had an appropriate affect, "sufficient hygiene and grooming, "made good eye contact," had coherent and normal speech, had normal and full orientation, denied having suicidal or homicidal ideations, had

normal though content and thought process, had "fair" judgment and insight, and appeared to have "average intelligence." (*Id.*).

The ALJ also observed that Hightower was not treated for mental health issues during the period in question. (Tr. 23). Furthermore, Hightower has been on no mental health medication, has not been hospitalized, and has not been seen regularly for treatment during the relevant time period. (*Id.*). In addition, treatment records show Hightower declining mental health referrals and having generally normal depression screening results. (*Id.*).

Moreover, the ALJ discussed how Hightower's clinical mental status findings during his visits to various VA medical providers had been predominantly unremarkable. (Tr. 23). Hightower's VA treatment records also consistently lack notations for subjective complaints of nightmares throughout the relevant time period, which contrast with Hightower's hearing testimony and complaints to the consultative psychological examiner. (*Id.*).

Thus, the Court finds, as the ALJ discussed, the relevant medical records do not indicate that Hightower's PTSD was a severe impairment. And even if his PTSD was a severe impairment, Hightower failed to show that that his PTSD in combination with his other impairments caused additional limitations on his ability to work not stated in the RFC finding.

**II.     The ALJ's RFC Finding is Supported by Substantial Evidence.**

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The claimant's RFC represents "the most [he or she] can still do despite [their] limitations." *Id.* at § 404.1545(a)(1). Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See id.* at § 404.1527(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021) (citing 20 C.F.R. § 404.1546(c)) ("The Commissioner of the Social Security Administration has, at the hearing level, delegated to an administrative law judge the responsibility of determining a claimant's residual functional capacity and whether the claimant is disabled."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ.").

Here, Hightower argues his self-described limitations contradict the ALJ's finding that he retained the residual functional capacity to perform a limited range of medium work:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

(Doc. 11 at 5); 20 C.F.R. § 404.1567(c).

Specifically, Hightower testified he has debilitating low back pain with sciatica and PTSD. (Tr. 48). Hightower claims he is in constant pain and cannot stand for long periods of time. (Tr. 230). Accordingly, Hightower alleges he spends 75 percent of the day lying down, that his wife does the house and lawn work, and that he isolates himself. (Tr. 62, 232, 235). To treat his pain, Hightower uses a TENS unit and takes pain medication daily. (Tr. 49, 51). In essence, Hightower argues that his testimony and subjective complaints of pain render him disabled.

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. [*Wilson* v. *Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021). A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted); *see also Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021).

12

Social Security Ruling ("SSR") 16-3p eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."  SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017).  An ALJ's findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2017 WL 5180304, *10; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Applying the pain standard, the ALJ concluded Hightower's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms," but he nonetheless found Whitson's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . .." (Tr. 27).

In response, Hightower argues that the ALJ erroneously mischaracterized and selectively treated the medical record. (Doc. 8 at 11). Hightower discusses how his medical records show "he was consistently treated for . . . low back pain," "prescribed numerous medications," and then he emphasizes an x-ray that portrayed he suffered "multi-level degenerative disc disease, moderate to severe from L4-S1 and mild at L3-4." (*Id.* at 12) (emphasis in original). Hightower states that the ALJ acknowledged the x-ray but "failed to consider the significant abnormalities." (*Id.* at 13).

Indeed, the ALJ acknowledged Hightower had "some history of lower back pain and discomfort due to severe degenerative disc disease of the lumbar spine." (Tr. 27). Furthermore, the ALJ referenced Hightower's June 2022 clinical presentation, which was "completely unremarkable." In April 2022, Hightower's physical examination was "essentially normal," he showed to have a steady gait, grossly intact cranial nerves, and a full range of motion. (*Id.*). He was also able to transfer between seated and standing "without difficulty." (*Id.*).

The ALJ then referenced the previous referenced lumbar spine x-ray taken during his consultative exam, and mentioned during that same exam, Hightower had

14

a reduced lumbar spine range of motion, but otherwise had normal musculoskeletal findings. (Tr. 27).   Hightower also appeared to have a normal gait, walked unassisted, and used no devices.   (*Id.*).   Hightower also had normal use of the extremities with full strength throughout bilaterally.  (*Id.*).

Here, the ALJ did not cherry pick the evidence but weighed it.  Hightower, in essence, disagrees with how the ALJ weighed parts of the record that supported the RFC finding, references an x-ray that supports his argument, and asks the Court to inappropriately reweigh the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.").

Moreover, the issue before the Court is not whether the evidence might support Hightower's allegations but whether substantial evidence supports the ALJ's RFC finding.  *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.").  Accordingly, the Court finds the evidence that Hightower cites in support of his argument does not sustain a different ruling, and that the record substantially supports the ALJ's RFC finding.

**CONCLUSION**

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

The court will enter a separate final judgment.

**DONE** and **ORDERED** this March 21, 2024.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE